**Law Offices of Mandana Jafarinejad, P.C.**
Mandana Jafarinejad (SBN 273904)
E-mail: ms.mandanaj@gmail.com
1 Park Plaza, Suite 600
Irvine, California 92614
Telephone:  (949) 833-7125

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFINITY CANOPY, INC, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> IMPORT FENCE DIRECT, INC., a California corporation; LONG XIANG SHEN, an individual; and DOE 1 through DOE 10, inclusive, <br><br><br> Defendants. | Case No.: 2:19-cv-08427-AB-AGR <br><br> **PLAINTIFF INFINITY CANOPY, INC.'S OPENING CLAIM CONSTRUCTION BRIEF** <br><br> Date:     January 28, 2022 <br> Time:    10:00 a.m. <br> Ctrm:   7B <br><br> Hon. Judge Andre Birotte Jr. |

# TABLE OF CONTENTS

I.  INTRODUCTION……………………………………………1
    A.  Background ........................................................................1
    B.  Claim Construction ...........................................................2
    C.  The Terms at Issue and the Parties' Proposed Constructions.......3

II. THE PATENT, CLAIMS, AND PRODUCTS AT ISSUE ................6
    A.  The '723 Patent .................................................................6
    B.  The '755 Patent .................................................................7
    C.  The '012 Patent .................................................................8
    D.  The '441 Patent ...............................................................10

III. LEGAL STANDARD...........................................................11

    A.  Claims Are to Be Given Their Ordinary and Customary
        Meaning From the Standpoint of a Person of Ordinary Skill in
        the Art at the Time of the Invention ............................................13
    B.  Terms Are Interpreted First and Foremost on the Basis of Their
        Use in the Invention ....................................................................14
    C.  Claims Are Construed in Light of the Specification, But
        Limitations Present In Embodiments Should Not Be Read
        Into the Claims ............................................................................14
    D.  The Court May Also Rely on Extrinsic Evidence Such as
        Dictionary Definitions ................................................................17

IV. PLAINTIFF'S INTERPRETATIONS OF THE TERMS AT
    ISSUE............................................................................................18
    A.  "Accessory" ................................................................18
    B.  "Canopy Pieces" .........................................................20
    C.  "Cavity" ......................................................................21
    D.  "Edge of Canopy" .......................................................22
    E.  "Elongated Rods"........................................................24
    F.  "Elongated Bars".........................................................25
    G.  "Track" ........................................................................25

V.  CONCLUSION...............................................................26

i

1

**Cases**

2

3   *Brown v. 3M,*
4           265 F.3d 1349, 1352 (Fed. Cir. 2001).................................13

5   *Cybor Corp. v. Fas Techs*,
6           138 F.3d 1448 (Fed. Cir. 1998)..........................................2, 12

7   *Dow Chem. Co. v. SumitomoChem. Co., Ltd.*,
8           257 F.3d 1364, 1373, 1375 (Fed. Cir. 2001).....................17

9   *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*,
10          34 F.3d 1048, 1054 (Fed. Cir. 1994)................................15

11  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
12          381 F.3d 1111 (Fed. Cir. 2004).........................................3, 12, 14

13  *Interactive Gift Express, Inc. v. Compuserve, Inc.,*
14          256 F.3d 1323 (Fed. Cir. 2001).........................................3, 12

15  *Laitram Corp. v. NEC Corp.*,
16          163 F.3d 1342, 1347 (Fed. Cir. 1998) ..............................14

17  *Liebel-Flarsheim v. Medrad, Inc.*,
18          358 F.3d 898, 906 (Fed. Cir. 2004) ..................................15

19  *Macrovision Corp. v. Dwight Cavendish Devs.,*
20          105 F. Supp 2d 1070 (N.D. Cal. 2000) .............................*passim*

21  *Markman v. Westview Instruments, Inc.*,
22          517 U.S. 370 (1996) .........................................................*passim*

23  *McCarty v. Lehigh Val R. Co.*,
24          160 U.S. 110, 116 (1895) .................................................17

25  *Merck & Co. v. Teva Pharms. USA, Inc.*,
26          347 F.3d 1367, 1371 (Fed. Cir. 2003)...............................14

27  *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*,
28          403 F.3d 1364, 1369 (Fed. Cir. 2005)...............................15

*Pause Technology LLC v. Tivo Inc.*,
      419 F.3d 1326, 1335 (Fed. Cir. 2005)................................ *11*

*Phillips v. AWH Corp.*,
      415 F.3d 1303 (Fed. Cir. 2005)..........................................*passim*

*Schumer v. Lab. Computer Sys., Inc.*,
      308 F.3d 1304, 1311 (Fed. Cir. 2002)............................... 17

*Terlep v. Brinkmann Corp.*,
      418 F.3d 1379, 1382 (Fed. Cir. 2005)............................... *11*

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
      299 F.3d 1313, 1327 (Fed. Cir. 2002)............................... *15*

*Vita-Mix Corp. v. Basic Holding, Inc.*,
      581 F.3d 1317 (Fed. Cir. 2009).......................................... 3, 12

*Vitronics Corp. v. Conceptronic, Inc.*,
      90 F.3d 1576, 1582 (Fed. Cir. 1996).................................. 13, 14, 17

*U.S. Surgical Corp. v. Ethicon, Inc.*,
      103 F.3d 1554, 1568 (Fed. Cir. 1997)............................... 12

# I. **INTRODUCTION**

In accordance with the Court's Standing Orders (DKT #s16 and 23) and its November 17, 2021 amended Scheduling Orders (DKT #s 48 and 55), Plaintiff Infinity Canopy, Inc. ("Infinity Canopy") hereby files its Opening Claim Construction Brief in connection with the Claim Construction Hearing presently Scheduled for January 28, 2022.

## A. Background

This case involves four related patents: (1) US Patent No. 9,938,723 (the '723 Patent); (2) US Patent No. 9.745,755 (the '755 Patent); (3) US Patent No. 9.470,012 (the '012 Patent); and (4) US Patent No. 9,255,441 (the '441 Patent), collectively referred to as "the patents-in-suit" which are directed to canopy systems. The patented technology, more particularly, includes a retractable canopy system that requires minimal effort to install.

Infinity Canopy is a globally recognized retailer of canopy systems and is a pioneer in the market for easy-assembly canopies requiring minimal installation effort. Infinity Canopy is the assignee of the patents-in-suit. When the original inventor attempted to install a canopy system at his home, he quickly discovered he had to pay for expensive installation. As a way to simplify the installation process, the original inventor developed an easy-to-install, retractable suspended canopy system that any person of ordinary skill could install. The canopy system was so revolutionary that it has won multiple awards and has become a commercial success both in the United States and internationally.

Infinity Canopy sells its canopy systems through its online website and through several third-party retailers, marketing its canopies as "the first and only slide-on-wire canopy system that is ready to install out of the box." The versatility of the unique design is a large factor in the canopy system's success, allowing consumers to easily customize and modify the canopies according to style and

design. Infinity Canopy has been featured in highly regarded consumer magazines, such as Architectural Digest, Hearth & Home, Ocean Home, Luxury Pools, Outdoor Living, and Specialty Fabrics Review, among others.

Defendant Long Xiang Shen ("Shen"), through his company Defendant Import Fence Direct, Inc. ("Import Fence Direct"), among other entities, copied Infinity Canopy's canopy system outright. Instead of pursuing independent product development, Defendant Shen, through Defendant Import Fence Direct (collectively "Defendants") relied on Infinity Canopy's research, development, marketing, and reputation to create and market an identical copy of Infinity Canopy's product.

Infinity Canopy's canopy system is configured to be suspended from a support wire, connected to mechanisms that easily slide along tracks on opposite sides of parallel elongated rods and can be fastened or detached at any location along the rods. Variations of the system are described in patents-in-suit. Defendants blatantly copied Infinity Canopy's design mechanism and have made, marketed, imported, used, and sold and/or offered for sale several knock-off products that imitate Infinity Canopy's design.

On September 30, 2019, Infinity Canopy filed its complaint against Defendants for infringing the patents-in-suit (Dkt #1).

**B. Claim Construction**

To determine the scope and meaning of a patent claim, a court must first look to the intrinsic evidence of the inventor's intended meaning. *Macrovision Corp. v. Dwight Cavendish Devs.*, 105 F. Supp. 2d 1070, 1072 (N.D. Cal. 2000). A court may then review de novo extrinsic evidence to interpret the construction of the claim. *Cybor Corp.*, 138 F.3d at 1454 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981, 34 USPQ 2d 1321, 1329 (Fed. Cir. 1995)). In analyzing a patent claim, courts defer to the ordinary meaning of the words in the claim. *Phillips*

*v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Claims are construed broadly so as not to limit nor exclude the accused infringing product. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009). "[C]laim construction is not an obligatory exercise in redundancy and therefore does not require the court to repeat or restate every claim term." *Macrovision*, 105 F. Supp. 2d at 1072. Absent specific language intended to convey a particular definition by the inventor, a claim will be given its ordinary and accustomed meaning. *Id.*

A claim construction analysis must focus on the language of the claim itself, because that language was specifically designated by the inventor of the patent to describe the patentee's invention. *InnovaPure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)). In determining the meaning of a claim term, courts inquire into several factors. *Id.* First, a court will look to the meaning a claim would have to a person of ordinary skill in the art. *Id.* In doing so, an objective test examines the words of the claim itself, the prosecution history, extrinsic evidence concerning ordinary principles behind any scientific meanings of the claim terms, and prior art. *Id.* To deviate from the original meaning of a claim term would be unjust to the inventor to construe its meaning in a different manner. *Id.* (citing *Merrill v. Yeomans*, 94 U.S. 568, 570, 24 L.Ed. 235 (1876)).

**C. The Terms at Issue and the Parties' Proposed Construction**

The terms at issue here and the Parties' proposed constructions are as follows:

| Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Accessory | An addition to a canopy system that can be attached or suspended to one or more of the lower or upper cavity or held by an elongated | A separate device that is attached to the lower cavity or upper cavity of the elongated rod. |

| | | |
|---|---|---|
| | rod.  For example, a solar charger, insect repellant, speakers, projectors, mist producers (humidifiers), fans decorations, or one or more lights. | |
| Canopy Pieces | More than one piece of material that allows for closing and opening the canopy system, each having two parallel edges connected to elongated rods or attached to elongated bars, which are placed inside elongated rods. Examples of suitable materials include solid, mesh, and canvas fabric, including fabric that is made from natural or synthetic materials, such as cotton, silk or polyester. Solid sheets of synthetic materials such as plastic or metal can be used as long as the sheet is flexible.  The material can be transparent, translucent, opaque, or waterproof. | Fabric covering having two parallel edges, each attached or connected to an elongated bar between two elongated rods through the opening in the groove of the lower cavity of the elongated rods. |

| Cavity | A space in an elongated rod that may contain: one or more channels, or one or more grooves, and/or one or more tracks that run substantially along the elongated rod. | An unfilled space within a mass. |
|---|---|---|
| Edge of Canopy | The parallel end of a canopy piece. | Parallel ends of a canopy piece with each end affixed or connected to an elongated bar and each end being within two adjacent elongated rods. |
| Elongated Rods | The portion of a canopy system configured to attach to a connection mechanism that attaches to attach to an elongated bar. | An extended piece, each connected to one edge of a canopy piece, having at least one upper cavity and one lower cavity, where the upper cavity contains an upper track and a lower track. |
| Elongated Bars | The portion of a canopy system configured to attach to a connection mechanism that attaches to an elongated rod. | An extended piece each connected to one edge of a canopy piece, which is inserted into the lower cavity of an elongated rod. |

| Track | One or more portions of an elongated rod that run substantially along the elongated rod. | An open area within the upper cavity of the elongated rod, running substantially along the elongated rod. |
| --- | --- | --- |

In line with the principles set forth above, Plaintiff's proposed constructions are straightforward, ordinary and customary. They are derived directly from the words of the claims. They use the plain and ordinary meaning of the claim terms. They are formed by the specification and supported by standard dictionaries.

In contrast, Defendant's propose construction includes limitations that are not present in the ordinary or customary interpretations of the words being construed. They improperly import limitations from particular embodiments of the specification. Defendant's constructions are contrary to the plain and ordinary meaning of the claim terms and are litigation-inspired re-writings of the claims crafted solely for the purpose of avoiding infringement.

Plaintiff's proposed constructions are in accordance with controlling law and should be adopted. Infinity Canopy respectfully request that the Court adopt its proposed constructions.

## II. The Patents, Claims, and Products at Issue

### A. The '723 Patent, Claim and Products at Issue

Claim 1 of the '723 Patent is directed to a canopy system comprising two or more elongated rods positioned parallel to each other, each elongated rod has an enclosed cavity, at least one canopy piece, two or more elongated bars attached to the canopy piece, each of the elongated bars configured to be held by one of the elongated rods, and at least two connection mechanisms, with at least one connection mechanism slidably attached to each of the elongated rods. The connection mechanisms contain a connector that is configured to be suspended from a support, connecting the canopy system to the support. Each connection

mechanism is further configured to slide along tracks on opposite sides of the enclosed cavity of the elongated rods and detachably fasten at any location along the elongated rods.

Not unlike those of Infinity Canopy, Defendants' Accused Products have a first and second elongated rod positioned parallel to each other, each elongated rod has an enclosed cavity, at least one canopy piece, two or more elongated bars attached to the canopy piece. Each of the elongated bars is configured to be held by one of the elongated rods. The Accused Products also have at least two connection mechanisms slidably attached to each of the elongated rods. The connection mechanisms contain a connector that is configured to be suspended from a support, connecting the canopy system to the support. Each connection mechanism is further configured to slide along tracks on opposite sides of the enclosed cavity of the elongated rods and detachably fasten at any location along the elongated rods.

Claim 1 of Infinity Canopy's patent does not contain complicated or technical language that requires construction beyond its ordinary meaning. To the contrary, Claim 1 contains plain language terms that are easily interpretable by a layperson of ordinary skill. Accordingly, there is no reason to depart from the long precedented rules of claim construction that claims should be interpreted as having plain and ordinary meaning.

**B. The '755 Patent, Claim and Products at Issue**

Infinity Canopy asserts one claim of the '755 Patent: Claim 4. Claim 4 consists of a canopy system comprising a first and second elongated rod positioned parallel to each other, at least one canopy piece having a first and second parallel edge, and two or more elongated bars, each of the bars attached to one of the edges of at least one canopy piece. Each elongated bar is held by a respective elongated rod and one or more of the following: (1) a distance control thread attached to each of the elongated rods in a perpendicular direction, and attached from a top by a

fastener that travels inside of the rod; (2) two or more roller tracks attached in a perpendicular direction to the elongated rods, the elongated rods are configured to be suspended from the roller tracks and slide along the roller tracks, the roller tracks attach to a support structure at the end of the roller tracks; and or (3)  two or more connection mechanisms, at least one of which attaches in a horizontal direction to one of the ends of an elongated rod, each connection mechanism has a connector that holds the canopy system to the support.

Defendants' Accused Products have a first and second elongated rod positioned parallel to each other, at least one canopy piece having a first and second parallel edge, and two or more elongated bars. Each of the bars attaches to one of the edges of at least one canopy piece. Each elongated bar is held by a respective elongated rod and a distance control thread attached to each of the elongated rods in a perpendicular direction, which is attached from a top by a fastener that travels inside of the rod.

Claim 4 of Infinity Canopy's patent does not contain complicated or technical language that requires construction beyond its ordinary meaning. To the contrary, Claim 4 contains plain language terms that are easily interpretable by a layperson of ordinary skill. Accordingly, there is no reason to depart from the long precedented rules of claim construction that claims should be interpreted as having plain and ordinary meaning. Further, every element of Claim 4 is present in Defendants' Accused Product.

## C. The '012 Patent, Claim and Products at Issue

Infinity Canopy asserts one claim of the '012 Patent: Claim 1. Claim 1 is directed to a canopy system comprising two or more elongated rods positioned parallel to each other, each of the elongated rods having an enclosed cavity. Claim 1 also consists of at least one canopy piece having two parallel edges. Claim 1 additionally consists of two or more elongated bars, each of the elongated bars

attaches to one of the edges of at least one canopy piece, and each of the elongated bars is configured to be held by one of the elongated rods. Claim 1 further comprises at least two connection mechanisms, at least one connection mechanism slidably attached to each of the elongated rods. Each of the connection mechanisms has a connector, the connector is configured to be suspended from a support and to connect the canopy system to the support. Each of the connection mechanisms is further configured to slide along the tracks on opposite sides of the enclosed cavity of the elongated rods and detachably fasten at any location along the elongated rods.

Defendants' Accused Products have a first and second elongated rod positioned parallel to each other, each of the elongated rods has an enclosed cavity and at least one canopy piece having two parallel edges. The Accused Products also consists of two or more elongated bars, each of the elongated bars attaches to one of the edges of at least one canopy piece, and each of the elongated bars is configured to be held by one of the elongated rods. There are at least two connection mechanisms, at least one connection mechanism is slidably attached to each of the elongated rods. Each of the connection mechanisms has a connector, the connector is configured to be suspended from a support and to connect the canopy system to the support. Each of the connection mechanisms is further configured to slide along the tracks on opposite sides of the enclosed cavity of the elongated rods and detachably fasten at any location along the elongated rods.

Claim 1 of Infinity Canopy's patent does not contain complicated or technical language that requires construction beyond its ordinary meaning. To the contrary, Claim 1 contains plain language terms that are easily interpretable by a layperson of ordinary skill. Accordingly, there is no reason to depart from the long precedented rules of claim construction that claims should be interpreted as having plain and ordinary meaning. Further, every element of Claim 1 is present in Defendants' Accused Product.

**D. The '441 Patent, Claim and Products at Issue**

Infinity Canopy asserts one claim of the '441 Patent: Claim 1. Claim 1 is directed to a canopy system comprising of a first and second elongated rod, each of which have a track and are positioned parallel to each other. Claim 1 also consists of a canopy piece that has a first and second parallel edge, a first and second elongated bar, the first of which attaches to the first parallel edge of the canopy piece and the second of which attached to the second parallel edge of the canopy piece. The first and second elongated bars are configured to be held by the first and second elongated rods respectively, and at least a first and second connection mechanism. At least one connection mechanism attaches to the track of each of the first and second elongated rods, each of the first and second connection mechanisms has a connector. The connector is capable of being suspended from a support and connect the canopy to the support. The first and second connection mechanism is further configured to slide along the track and detachably fasten at any location along the track of the first and second elongated rod. The first and second connection mechanism is configured to be fastened to the track of the first and second elongated rod from a top of the first and second elongated rod, wherein the connection mechanism can slide along the track and be fastened to different positions on the track.

Defendants' Accused Products have a first and second elongated rod, each of which have a track and are positioned parallel to each other. The Accused Products also consist of a canopy piece that has a first and second parallel edge, a first and second elongated bar, the first of which attaches to the first parallel edge of the canopy piece and the second of which attached to the second parallel edge of the canopy piece. The first and second elongated bars are configured to be held by the first and second elongated rods respectively, and at least a first and second connection mechanism. At least one connection mechanism attaches to the track of

each of the first and second elongated rods, each of the first and second connection mechanisms has a connector. The connector is suspended from a support and connect the canopy to the support. The first and second connection mechanism can slide along the track and detachably fasten at any location along the track of the first and second elongated rod. The first and second connection mechanism fastened to the track of the first and second elongated rod from a top of the first and second elongated rod, and the connection mechanism can slide along the track and be fastened to different positions on the track.

Claim 1 of Infinity Canopy's patent does not contain complicated or technical language that requires construction beyond its ordinary meaning. To the contrary, Claim 1 contains plain language terms that are easily interpretable by a layperson of ordinary skill. Accordingly, there is no reason to depart from the long precedented rules of claim construction that claims should be interpreted as having plain and ordinary meaning. Further, every element of Claim 1 is present in Defendants' Accused Product.

## III.   <u>LEGAL STANDARD</u>

Claim construction allows the parties to assist the Court with its obligation to construe, as a matter of law, the asserted claims of the patents-in-suit. *See e.g.*, *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370, 391 (1996). Perhaps the best overall summary of Federal Circuit claim construction jurisprudence can be found in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-24 (Fed. Cir. 2005) (*en banc*).

Claim construction is the first step in the two-step process of determining infringement. *Pause Technology LLC v. Tivo Inc*., 419 F.3d 1326, 1335 (Fed. Cir. 2005). The goal of claim construction is simply to understand the scope of the claim language as it exists in the patent, by "elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp*., 418 F.3d 1379, 1382 (Fed. Cir. 2005).

Consistent with this principle, courts need not construe claim terms where doing so would add no clarity over and above the plain meaning of the words used in the claim itself. The Federal Circuit has emphasized that courts need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." U.*S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

To determine the scope and meaning of a patent claim, a court must first look to the intrinsic evidence of the inventor's intended meaning. *Macrovision*, 105 F. Supp. 2d at 1072. A court may then review de novo extrinsic evidence to interpret the construction of the claim. *Cybor Corp.*, 138 F.3d at 1454 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981, 34 USPQ 2d 1321, 1329 (Fed. Cir. 1995)). In analyzing a patent claim, courts defer to the ordinary meaning of the words in the claim. *Phillips*, 415 F.3d at 1312. Claims are construed broadly so as not to limit nor exclude the accused infringing product. *Vita-Mix*, 581 F.3d at 1324. "[C]laim construction is not an obligatory exercise in redundancy and therefore does not require the court to repeat or restate every claim term." *Macrovision*, 105 F. Supp. 2d at 1072. Absent specific language intended to convey a particular definition by the inventor, a claim will be given its ordinary and accustomed meaning. *Id.*

A claim construction analysis must focus on the language of the claim itself, because that language was specifically designated by the inventor of the patent to describe the patentee's invention. *InnovaPure Water,* 381 F.3d at 1116 (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)). In determining the meaning of a claim term, courts inquire into several factors. *Id.* First, a court will look to the meaning a claim would have to a person of

ordinary skill in the art. *Id.* In doing so, an objective test examines the words of the claim itself, the prosecution history, extrinsic evidence concerning ordinary principles behind any scientific meanings of the claim terms, and prior art. *Id.* To deviate from the original meaning of a claim term would be unjust to the inventor to construe its meaning in a different manner. *Id.* (citing *Merrill v. Yeomans,* 94 U.S. 568, 570, 24 L.Ed. 235 (1876)).

## A. Claims Are to Be Given Their Ordinary and Customary Meaning From the Standpoint of a Person of Ordinary Skill in the Art at the Time of the Invention

The words of a claim "are generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Federal Circuit has made clear that "the ordinary and customary meaning of a claim term is the meaning that the term would have had to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314; *see also Brown v. 3M,* 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims' words "[were] not technical terms of art and [did] not require elaborate interpretation"). "In such circumstances, general purpose dictionaries may be helpful." *Phillips*, 415 F.3d at 1314.

**B. Terms Are Interpreted First and Foremost on the Basis of Their Use in the Invention**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' " *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). "[W]e look to the words of the claims themselves ... to define the scope of the patented invention." *Vitronics*, 90 F.3d at 1582. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. The use of a term within a claim can provide a "firm basis for construing the term." *Id.*

Thus, "it is the **claims**, not the written description, which define the scope of the patent right." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998)(emphasis in original).

**C. Claims Are Construed in Light of the Specification, But Limitations Present in Embodiments Should Not Be Read Into the Claims**

The claims, of course, do not stand alone. Rather, they are part of "a fully integrated written instrument," consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'

*Phillips*, 415 F.3d at 1315 (citations omitted).

"[T]he claims must be construed so as to be consistent with the specification." *Id. at* 1316 (quoting *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003)).

It is important to understand, however, that interpreting the claims *consistently with the specification* is very different from *importing limitations from the specification* into the claims—an exercise the Federal Circuit "[has] repeatedly warned against." *Phillips*, 415 F.3d at 1323. "The written description part of the

specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980.

Thus, a limitation found in an embodiment in the specification (even a preferred embodiment) should not be read into the claims. *Phillips,* 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("Thus, although the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments").

Indeed, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.' " *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). This is because "claims may embrace 'different subject matter than is illustrated in the specific embodiments in the specification.' " *Phillips,* 415 F.3d at 1323 (quoting *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005)).

Because particular embodiments in the specification should not be read into the claims, the Federal Circuit has repeatedly held that "the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms." *See, e.g.*, *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d at 1327; *SRI Int'l v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985) (*en banc*) ("Specifications teach. Claims claim... . That a specification

describes only one embodiment does not require that each claim be limited to that one embodiment."); *Phillips*, 415 F.3d at 1323.

To be sure, "[i]f everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment… . The law does not require the impossible. Hence, it does not require that the applicant describe in his specification every conceivable and possible future embodiment of his invention." *SRI Int'l*, 775 F.2d at 1121.

"To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent." *Phillips*, 415 F.3d at 1323 (internal citation omitted).

These principles of claim construction are long standing and unassailable. Indeed, the United States Supreme Court held over 100 years ago that "we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that if we once begin to include elements not mentioned in the claim in

order to limit such claim …, we should never know where to stop." *McCarty v. Lehigh Val R. Co.*, 160 U.S. 110, 116 (1895).

### D. The Court May Also Rely on Extrinsic Evidence Such as Dictionary Definitions

Additionally, the Court may rely on extrinsic evidence, including dictionaries and treatises, to give context to the meaning of words, in order to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Phillips*, 415 F.3d at 1318; *Markman,* 52 F.3d at 980. "A dictionary definition has the value of being an unbiased source 'accessible to the public in advance of litigation.' " *Phillips*, 415 F.3d at 1322 (quoting *Vitronics*, 90 F.3d at 1585). "Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words… ." *Phillips*, 415 F.3d at 1322. Reliance on dictionaries is particularly appropriate where, as here, the words at issue are not technical in nature. *See Schumer v. Lab. Computer Sys., Inc*., 308 F.3d 1304, 1311 (Fed. Cir. 2002) ("The proper approach is to construe the claim language using standard dictionary definitions, because here, the claims have no specialized meaning.")

While dictionaries may be used to confirm or support an ordinary and customary interpretation adduced from the intrinsic evidence, courts should not rely on extrinsic evidence to contradict the ordinary and customary meaning discernable from examination of the intrinsic evidence. *Vitronics*, 90 F.3d at 1583 (holding that courts are free to consult dictionaries and technical treatises "when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1584 n.6; *Dow Chem. Co. v. SumitomoChem. Co., Ltd*., 257 F.3d 1364, 1373, 1375 (Fed. Cir. 2001) (same).

# IV. PLAINTIFF'S INTERPRETATIONS OF THE TERMS AT ISSUE

Plaintiff's proposed constructions (1) incorporate the plain and ordinary meaning of the terms, (2) are consistent with their use in the claims and specification, and (3) are further supported by cited dictionary definitions. In contrast, Defendants's litigation-inspired constructions would (1) result in reading limitations into the claims from an embodiment of the invention, conflict with the claim language and the specification, (3) cause the disputed claim terms to lose their context within the claims, and (4) make otherwise clear terms confusing, indefinite and circular. Accordingly, Plaintiff's proposed constructions should be adopted.

A. Accessory

| Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Accessory | *An addition to a canopy system that can be attached or suspended to one or more of the lower or upper cavity or held by an elongated rod.  For example, a solar charger, insect repellant, speakers, projectors, mist producers (humidifiers), fans decorations, or one or more lights.* | *A separate device that is attached to the lower cavity or upper cavity of the elongated rod.* |

No intrinsic evidence provides any special meaning for the term "accessory." Hence, the ordinary and customary meaning of the terms are used in the claims, to a person of ordinary skill in the art at the time of the invention, applies. *Phillips*, 415 F.3d 1313. Where an ordinary meaning is readily apparent, the court should apply the widely accepted meaning of commonly understood words. *Id*. at 1314. As

discussed above, applying controlling law, the ordinary meaning assigned to a term is based on how it is used in the claims, is informed by the specification, and is further supported by dictionary definitions. Limitations present in disclosed embodiments should not ordinarily be imported into the claims.

As described in the specification, an accessory is an addition to a canopy system that can be attached or suspended to one or more of the lower or upper cavity or held by an elongated rod. For example, a solar charger, insect repellant, speakers, projectors, mist producers (humidifiers), fans decorations, or one or more lights.

Plaintiff's proposed construction is consistent with the ordinary and customary meaning of this term as it appears in the specification. Further, plaintiff's proposed construction clarifies that an accessory is an addition to the canopy system, not any other part of the canopy system that may be defined differently for purposes of avoiding infringement.

In contrast, Defendant's proposed construction of "a separate device" is ambiguous to the meaning of the newly introduced term "device". Defendant's construction attempts to include a limitation that is not present in any ordinary interpretation of the term being construed and may improperly define a part of the canopy system as an Accessory. The term "accessory" is not stated in any of the claims of the patents-in-suit, and should not be interpreted to mean any of the components specified in the claims. The Court in determining the ordinary meaning of the terms in the claim, should not construe the term "accessory" as any of the components of the claims. Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

B. Canopy Pieces

| Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- |
| Canopy Pieces | *More than one piece of material that allows for closing and opening the canopy system, each having two parallel edges connected to elongated rods or attached to elongated bars, which are placed inside elongated rods. Examples of suitable materials include solid, mesh, and canvas fabric, including fabric that is made from natural or synthetic materials, such as cotton, silk or polyester. Solid sheets of synthetic materials such as plastic or metal can be used as long as the sheet is flexible. The material can be transparent, translucent, opaque, or waterproof.* | *Fabric covering having two parallel edges, each attached or connected to an elongated bar between two elongated rods through the opening in the groove of the lower cavity of the elongated rods.* |

The ordinary and customary meaning to a person of ordinary skill in the art at the time of the invention applies. *Phillips*, 415 F.3d at 1313. Where an ordinary meaning is readily apparent, the court should apply the widely accepted meaning of commonly understood words. *Id*. At 1314. As discussed above, applying controlling law, the ordinary meaning assigned to a term is informed by the claims, specification, prosecution history and is further supported by dictionary definitions.

Here, the ordinary meaning of canopy pieces is more than one piece of material. The claims and specification of the patent refer to "at least one canopy piece" and should not be construed as equivalent to requiring more than one canopy piece. Plaintiff's proposed construction is consistent with the specification and does not exclude any of the embodiments disclosed therein.

In contrast, Defendant's proposed construction that "canopy pieces" be construed as a "fabric covering" improperly reads a limitation into the claims that the inventor did not intend. *Phillips*, 415 F.3d at 1323. Defendant's interpretation would allow the plural "canopy pieces" to be equivalent to the singular "canopy piece" and imports limitations that are not present in the claims or in any ordinary interpretation of the term being construed.

Unlike Plaintiff's proposed construction, Defendant's proposal is inconsistent with the intrinsic evidence and dictionary definitions. Defendant's proposed construction improperly attempts to add limitation which do not appear in the claims and are not required by the intrinsic evidence. Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

C. Cavity

| Term | Plaintiff's Proposal | Defendant's Proposal |
|------|---------------------|---------------------|
| Cavity | *A space in an elongated rod that may contain:*<br>*one or more channels,*<br>*or*<br>*one or more grooves,*<br>*and/or*<br>*one or more tracks that run substantially along the elongated rod.* | *An unfilled space within a mass.* |

Plaintiff's proposed construction of "cavity" to mean a space in an elongated rod that may contain one or more channels, or more grooves, and/or one or more tracks that run substantially along the elongated rod is consistent with the ordinary and customary meaning of this term as it appears in the claims. Claim 1 of the '723 Patent states that "each of the elongated rods having an enclosed cavity" and "each of the connection mechanisms further configured to slide along tracks on opposite sides of the enclosed cavity of the elongated rods." Claim 4 of the '012 Patent states that "each of the elongated rods having an enclosed cavity." And "each of the connection mechanisms further configured to slide along tracks on opposite sides of the enclosed cavity of the elongated rods and detachably fastened at any location along the elongated rods.

Defendant's proposed construction is not based on intrinsic evidence and is ambiguous as to the meaning of "mass." Defendant's proposed construction is not specific to an elongated rod where the cavity is located.  Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

D. Edge of Canopy

| Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Edge of Canopy | *The parallel end of a canopy piece.* | *Parallel ends of a canopy piece with each end affixed or connected to an elongated bar and each end being within two adjacent elongated rods.* |

No intrinsic evidence provides any special meaning for the term "edge of canopy." Hence, the ordinary and customary meaning of the terms are used in the claims, to a person of ordinary skill in the art at the time of the invention, applies. *Phillips*, 415 F.3d 1313. Where an ordinary meaning is readily apparent, the court should apply the widely accepted meaning of commonly understood words. *Id.* at 1314. As discussed above, applying controlling law, the ordinary meaning assigned to a term is based on how it is used in the claims, is informed by the specification, and is further supported by dictionary definitions. Limitations present in disclosed embodiments should not ordinarily be imported into the claims.

Here, all of the patents-in-suit refer to the "edge of canopy" as the parallel ends of a canopy piece. Plaintiff's proposed construction is the ordinary meaning of the term "edge of canopy." Claim 4 of the '755 Patent states "at least one canopy piece having a first and second parallel edge." Claim 1 of the '012 Patent states "at least one canopy piece having two parallel edges." Claim 1 of the '441 Patent states "a canopy piece having a first and second parallel edge."

In contrast, Defendant's proposed construction "parallel ends of a canopy piece with each end affixed or connected to an elongated bar and each end being within two adjacent elongated rods" requires that the ends of a canopy piece be affixed or connected to an elongated bar and each end being within two adjacent elongated rods to be construed as the edge of the canopy piece. Defendant's proposed construction improperly attempts to add limitation which do not appear in the claims and are not required by the intrinsic evidence. Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

E. Elongated Rods

| Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Elongated Rods | *The portion of a canopy system configured to attach to a connection mechanism that attaches to attach to an elongated bar.* | *An extended piece, each connected to one edge of a canopy piece, having at least one upper cavity and one lower cavity, where the upper cavity contains an upper track and a lower track.* |

Plaintiff's proposed construction of the term "elongated rods" to mean "the portion of a canopy system configured to attach to a connection mechanism that attaches to attach to an elongated bar" is consistent with the ordinary and customary meaning of this term as it appears in the claims. In addition, Plaintiff's proposed construction is consistent with the ordinary and customary meaning of this term as it appears in the specification.

In contrast, Defendant's proposed construction of "an extended piece, each connected to one edge of a canopy piece, having at least one upper cavity and one lower cavity, where the upper cavity contains an upper track and a lower track" is ambiguous to the meaning of the newly introduced term "an extended piece". Defendant's construction attempts to include an ambiguity that is not present in any ordinary interpretation of the term being construed and may improperly define a part of the canopy system as an elongated bar. Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

F.  Elongated Bars

| Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Elongated Bars | *The portion of a canopy system configured to attach to a connection mechanism that attaches to an elongated rod.* | *An extended piece each connected to one edge of a canopy piece, which is inserted into the lower cavity of an elongated rod.* |

Plaintiff's proposed construction of the term "elongated bars" to mean "the portion of a canopy system configured to attach to a connection mechanism that attaches to an elongated rod" is consistent with the ordinary and customary meaning of this term as it appears in the claims. Plaintiff's proposed construction is consistent with the ordinary and customary meaning of this term as it appears in the specification.

In contrast, Defendant's proposed construction of "an extended piece each connected to one edge of a canopy piece, which is inserted into the lower cavity of an elongated rod." is ambiguous to the meaning of the newly introduced term "an extended piece". Defendant's construction attempts to include an ambiguity that is not present in any ordinary interpretation of the term being construed and may improperly define a part of the canopy system as an elongated bar. Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

G.  Track

| Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Track | *One or more portions of an elongated rod that run substantially along the elongated rod.* | *An open area within the upper cavity of the elongated rod, running substantially along the elongated rod.* |

Plaintiff's proposed construction of "track" to mean "one or more portions of an elongated rod that run substantially along the elongated rod" is consistent with the ordinary and customary meaning of this term as it appears in the claims. Plaintiff's proposed construction is consistent with the ordinary and customary meaning of this term as it appears in the specification.

In contrast, Defendant's proposed construction of "an open area within the upper cavity of the elongated rod, running substantially along the elongated rod" is ambiguous to the meaning of the newly introduced term "open area". Defendant's construction attempts to include an ambiguity that is not present in any ordinary interpretation of the term being construed and may improperly define a part of the canopy system as a track. Accordingly, Defendant's construction should be rejected.

Because Plaintiff's proposed construction is consistent with the ordinary meaning of the term as informed by the intrinsic evidence, Plaintiff's construction should be adopted.

## V. <u>CONCLUSION</u>

For all these reasons, Infinity Canopy's proposed constructions for the terms at issue should be adopted by the Court and Defendants's constructions rejected.

Respectfully Submitted,

Dated: December 23, 2021

LAW OFFICES OF MANDANA JAFARINEJAD, PC

By: /s/ Mandana Jafarinejad
Mandana Jafarinejad
Attorney for Plaintiff