UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 19-08427-AB (AGR) | Date: | January 26, 2022 |
|---|---|---|---|

Title: *Infinity Canopy, Inc. v. Import Fence Direct, Inc. et al*

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[IN CHAMBERS] CLAIM CONSTRUCTION ORDER**

    Plaintiff Infinity Canopy, Inc. ("Plaintiff" or "Infinite Canopy") and Defendants Import Fence Direct Inc. ("Import Fence") and Long Xiang Shen ("Shen") (collectively, "Defendants") have filed claim construction briefs asking the Court to construe seven disputed terms found in U.S. Patent Nos. 9,938,723 ("the '723 Patent"); 9,745,755 ("the '755 Patent"); 9,470,012 ("the '012 Patent"); and 9,255,441 ("the '441 Patent") (collectively, "the Asserted Patents").

    The parties filed a Joint Claim Construction Prehearing Statement. ("JCCPS," Dkt. No. 56.) Plaintiff filed an Opening Claim Construction Brief. ("Opening Br.," Dkt. No. 57.) Defendants filed a Responsive Claim Construction Brief. ("Resp. Br.," Dkt. No. 58.) Plaintiff filed a reply ("Reply," Dkt. No. 59. Finding this motion suitable for resolution without oral argument, the Court **VACATES** the hearing set for January 28, 2022. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

    The Court **CONTRUES** the disputed terms as set forth in this Order.

I.      BACKGROUND

The Asserted Patents are all titled "Canopy System" and claim priority to Provisional Patent Application No. 61/874,623, filed on September 6, 2013. The '441 Patent issued on February 9, 2016, the '012 Patent issued on October 18, 2016, the '755 Patent issued on August 29, 2017, and the '723 Patent issued on April 10, 2018. The Asserted Patents are "generally directed to a structural assembly, more particularly to a canopy system used to protect against sunlight, rain, wind, snow, and the like." *See, e.g.*, '723 Patent at 1:18–20. According to the Asserted Patents, the invention meets the need "for an inexpensive canopy system that possess advantages of using readily available components to allow for inexpensive setup and use." *See id.* at 1:17–26. Figure 6, reproduced below, depicts "a perspective view of an embodiment of the present invention having supporting frames and lights":



*Id.* at 5:14–15, Fig. 6. The canopy system in Figure 6 includes "a supporting frame **13**," "supporting posts **19** supporting one or more beams **29**," "support **4**," "elongated rods **2**," "canopy pieces **1**," and "lights **10**." *Id.* at 1:24–48.

Plaintiff asserts Claim 1 of the '441 Patent, Claim 1 of the '012 Patent, Claim 4 of the '755 Patent, and at least Claim 1 of the '723 Patent (collectively, "the Asserted Claims"). *See* Dkt. No. 57 at 6–11. Claim 1 of the '441 Patent recites:

   1. A canopy system comprising:

> a. a first and a second *elongated rod*, the first and the second *elongated rod* each having a *track* and positioned parallel to each other;
> b. a *canopy piece* having a first and a second parallel edge;
> c. a first and a second *elongated bar*, the first *elongated bar* attached to the first parallel *edge of the canopy piece*, and the second *elongated bar* attached to the second parallel *edge of the canopy piece*, the first and the second *elongated bar* configured to be held by the first and the second the *elongated rod* respectively; and
> d. at least a first and a second *connection mechanism*, with at least one *connection mechanism* attached to the *track* of each of the first and the second *elongated rod*, each of the first and the second *connection mechanism* having a *connector*, the *connector* capable of being suspended from a support and to connect the canopy system to the support, said first and said second *connection mechanism* further configured to slide along the *track* and detachably fastened at any location along the *track* of the first and the second *elongated rod*, the first and the second *connection mechanism* configured to be fastened to the *track* of the first and the second *elongated rod* from a top of the first and the second *elongated rod*;
> wherein the *connection mechanism* can slide along the *track* and be fastened to different positions on the *track*.

'441 Patent, Claim 1 (emphasis added).

Claim 1 of the '012 Patent recites:

> 1. A canopy system comprising:
> a. two or more *elongated rods* positioned parallel to each other, each of the *elongated rods* having an enclosed *cavity*;
> b. at least one *canopy piece* having two parallel edges;
> c. two or more of *elongated bars*, each of the *elongated bars* attached to one of the edges of at least one *canopy piece*, each of the *elongated bars* configured to be held by one of the *elongated rods*; and
> d. at least two *connection mechanisms*, with at least one *connection mechanism* slidably attached to each of

>>the *elongated rods*, each of the *connection mechanisms* having a *connector*, the *connector* configured to be suspended from a support and to connect the canopy system to the support, each of the *connection mechanisms* further configured to slide along *tracks* on opposites side of the enclosed *cavity* of the *elongated rods* and detachably fastened at any location along the *elongated rods*.

'012 Patent, Claim 1 (emphasis added).

>Claim 4 of the '755 Patent recites:

>>1. A canopy system comprising:
>>a) first and a second *elongated rod*, the first and the second *elongated rod* positioned parallel to each other;
>>b) at least one *canopy piece* having a first and a second parallel edge;
>>c) two or more of *elongated bars*, each of the *elongated bars* attached to one of the edges of at least one *canopy piece*, each of the *elongated bars* configured to be held by a respective *elongated rod*; and
>>one or more of:
>>i) a distance control thread attached to each of the first and the second *elongated rods* in a perpendicular direction, the distance control thread attached from a top by a fastener that travels inside of the rod;
>>ii) two or more roller tracks attached in a perpendicular direction to the first and the second elongated rods, the elongated rods configured to be suspended from the roller tracks and slide along the roller tracks, the roller tracks attached to a support structure at each end of the roller tracks;
>>iii) two or more *connection mechanisms*, with at least one *connection mechanism* attached in a horizontal direction to an end of one of the *elongated rods*, each of the *connection mechanisms* having a *connector*, the *connector* configured to be attached to a support and to connect the canopy system to the support.

'755 Patent, Claim 4 (emphasis added).

>Claim 1 of the '723 Patent recites:

> 1. A canopy system comprising:
> a. two or more *elongated rods* positioned parallel to each other, each of the *elongated rods* having, an enclosed *cavity*;
> b. at least one *canopy piece*;
> c. two or more of *elongated bars* attached to the at least one *canopy piece*, each of the *elongated bars* configured to be held by one of the *elongated rods*; and
> d. at least two *connection mechanisms*, with at least one *connection mechanism* slidably attached to each of the *elongated rods*, each of the *connection mechanisms* having a *connector*, the *connector* configured to be suspended from a support and to connect the canopy system to the support, each of the *connection mechanisms* further configured to slide along *tracks* on opposites side of the enclosed *cavity* of the *elongated rods* and detachably fastened at any location along the *elongated rods*.

'723 Patent, Claim 1 (emphasis added).

Further relevant disclosures from the Asserted Patents will be discussed in greater detail in relation to each of the parties' specific claim construction disputes.

## II.  LEGAL STANDARDS

As established in *Markman v. Westview Instruments*, 517 U.S. 370 (1996), claim construction is a matter wholly within the jurisdiction of the court. *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) ("[T]he construction of a patent . . . is exclusively within the province of the court."). The purpose of claim construction is to "determin[e] the meaning and scope" of a patented invention in order to define the patent owner's rights. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction is a legal issue that may require subsidiary findings of fact. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015).

Generally, a claim term is given its "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In patent cases, "the ordinary and customary meaning . . . is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention." *Philips*, 415 F.3d at 1313. "In some cases, the ordinary meaning . . . may be readily apparent," requiring only common

sense application of a widely accepted meaning. *Id.* at 1314. However, when claim meaning is not so readily apparent, a court must determine what a skilled person in the appropriate field of art would understand a claim term to mean. *Id.*

Courts first consider the intrinsic evidence, which includes the patent claims, patent specification, and prosecution history. *Vitronics*, 90 F.3d at 1582. "Attending this principle, a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point out and distinctly claim the [patented] subject matter.'" *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)). A term's use in context may help to distinguish or clarify its meaning from other potential definitions. *See, e.g., Phillips*, 415 F.3d at 1314 (illustrating that "steel baffles" implies that "baffles" are not intrinsically made of steel). Claim terms are commonly used consistently throughout a patent, and thus "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.*

The claim terms must be read in light of the specification. *Id.* at 1315 (citing *Vitronics*, 90 F.3d at 1582 ("[T]he specification 'is always highly relevant . . . . Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'")). The specification may provide insight into an inventor's understanding of her invention at the time of patenting, as it might contain an intentional disclaimer of claim scope that reveals limits on an inventor's intended invention. *Phillips*, 415 F.3d at 1316. The Federal Circuit has also recognized that an inventor may invoke a particular definition of a term in her specification or otherwise use a term in the specification in a manner that differs from the term's ordinary usage. *Id.* "In such cases, the inventor's lexicography governs." *Id.*

In addition to the patent itself, the Court "should also consider the patent's prosecution history, if it is in evidence." *Id.* at 1317. The prosecution history consists of "all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 90 F.3d at 1582. However, because the prosecution history, also called the "file history" or "file wrapper," is a product of negotiations between the inventor and the United States Patent and Trademark Office ("USPTO"), "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Nevertheless, like the specification, the prosecution history may still be useful in understanding the inventor's understanding of her own invention. *Id.* (citing *Vitronics*, 90 F.3d at 1582-83).

Moreover, during prosecution history, a patent applicant may disclaim claim scope by making a clear and unequivocal disavowal of the plain meaning of ordinary claim language. *Id.* at 1319 (citing *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002)).

After looking at the intrinsic evidence, courts may consider extrinsic evidence, including inventor and expert testimony, dictionaries, and treatises. *Phillips*, 415 F.3d at 1317. However, extrinsic evidence is "less significant than the intrinsic record" because it is generally "less reliable." *Id.* at 1317-18. Additionally, extrinsic evidence cannot be used to change the meaning of a term as used in the specification. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Thus, the extrinsic evidence should always be considered in context of the intrinsic evidence. *Phillips*, 415 F.3d at 1319.

Technical dictionaries are a particular type of extrinsic evidence that may provide information about the ways a term is used in a particular field of art. *Id.* at 1318. Expert testimony may also be useful in several ways, "such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding . . . is consistent with that of a person of skill in the art, or to establish that a particular term . . . has a particular meaning in the pertinent field." *Id.* However, as with all extrinsic evidence, courts will "discount any expert testimony 'that is clearly at odds with [the intrinsic evidence] of the patent,'" as well as expert testimony that is conclusory or unsupported. *Id.* (quoting *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)).

### III. DISCUSSION

#### A. Agreed Upon Terms

The parties have agreed to the following constructions of certain claim terms:

| Term (Claim(s)) | Agreed Construction |
|---|---|
| "connector" ('441 Patent, Claims 1, 2, 5, 6, 17; '012 Patent, Claims 1–4, 15; '755 Patent, Claim 4; '723 Patent, Claims 1, 2, 10, 17) | "a piece, which is a part of the connection mechanism, capable of being suspended from a support" |
| "connection mechanism" ('441 Patent, Claims 1, 2, 14, 16, 20, 27; '012 Patent, Claims 1, 2, 4, 14, 15; '755 Patent, Claims 4, 6, 7; '723 Patent, Claim 1) | "a piece having a connector and a base having a horizontal bar with one or more threaded holes which can be fastened from outside the upper cavity and capable of being |

| | |
|---|---|
| | "slidably inserted into a lower track of the upper cavity" |
| "detachably fastened" ('441 Patent, Claim 1; '012 Patent, Claim 1; '723 Patent, Claim 1) | "connection mechanism being capable of disconnect and reconnect at any location along an elongated rod" |
| "tubular" ('441 Patent, Claims 3, 12) | "shape of a channel within the lower cavity of the elongated rod or a shape of an elongated bar being circular" |

*See* Dkt. 56. The Court accepts the parties' agreed constructions, which will bind them. *See MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1377–78 (Fed. Cir. 2007) (rejecting appellate challenge to claim construction agreed to by party in district court).

### B. Disputed Terms

#### i. "Accessory"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "accessory" ('441 Patent, Claims 8, 9, 17) | "an addition to a canopy system that can be attached or suspended to one or more of the lower or upper cavity or held by an elongated rod. For example, a solar charger, insect repellant, speakers, projectors, mist producers (humidifiers), fans decorations, or one or more lights." | "a separate device that is attached to the lower cavity or upper cavity of the elongated rod" |

The Court declines to construe the term "accessory." As Plaintiff argues, none of the Asserted Claims recite an "accessory." (Dkt. No. 59 at 3.) Additionally, both parties agree that the '441 Patent uses the plain and ordinary meaning of the term "accessory" as understood by a person of ordinary skill in the art ("POSITA") at the time of the invention. The parties even agree with the crux

of each other's constructions but dispute the particular wording. Because there is no actual dispute for the term "accessory," the Court declines to construe the term.

### ii. "Canopy Piece"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "canopy piece" ('441 Patent, Claims 1, 2, 13, 26; '012 Patent, Claims 1, 4, 5, 12, 15; '755 Patent, Claims 1, 4; '723 Patent, Claims 1, 9, 16) | "More than one piece of material that allows for closing and opening the canopy system, each having two parallel edges connected to elongated rods or attached to elongated bars, which are placed inside elongated rods. Examples of suitable materials include solid, mesh, and canvas fabric, including fabric that is made from natural or synthetic materials, such as cotton, silk or polyester. Solid sheets of synthetic materials such as plastic or metal can be used as long as the sheet is flexible. The material can be transparent, translucent, opaque, or waterproof" | "Fabric covering having two parallel edges, each attached or connected to an elongated bar between two elongated rods through the opening in the groove of the lower cavity of the elongated rods" |

The Court declines to construe the term "canopy pieces."

Plaintiff argues that "the ordinary meaning of canopy pieces is more than one piece of material," given that the term is plural. (Dkt. 57 at 21.) Plaintiff argues that Defendants' construction "improperly reads a limitation into the claims" by broadening the term to allow for a singular canopy piece and that "Defendant[s']

proposal is inconsistent with the intrinsic evidence and dictionary definitions." *Id*. Plaintiff does not cite any evidence, however. Further, none one of the Asserted Claims recite "canopy pieces"; rather, the Asserted Claims either recite "a canopy piece" or "at least one canopy piece." *See* '441 Patent, Claim 1; '012 Patent, Claim 1; '755 Patent, Claim 4; '723 Patent, Claim 1. In Plaintiff's reply brief, Plaintiff even asserts that "[t]here is no requirement that can be drawn by any of the claims that multiple canopy pieces are necessary for infringement." (Dkt. 59 at 4.)

Defendants argue that the claimed "canopy pieces" must be made of "some types of fabric," as evidenced by the specifications of the Asserted Patents. (Dkt. 58 at 10.) However, as Defendants cite, the specifications disclose that "[t]he material for canopy pieces **1** can be any suitable material that allows for closing and opening the canopy system," and specifically references "synthetic materials such as plastic or metal[.]" *See, e.g.*, '723 Patent at 11:16–24.

Defendants also assert that the "canopy piece(s)" must have two parallel edges, and Plaintiff does directly not address this. With the exception of Claim 1 of the '723 Patent, the Asserted Claims explicitly recite that the "canopy piece" has at least two parallel edges, with Claim 1 of the '012 Patent reciting "at least one canopy piece having two parallel edges." Defendants construction would render this language superfluous. *See Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000) ("Under the doctrine of claim differentiation, it is presumed that different words used in different claims result in a difference in meaning and scope for each of the claims."). The remainder of Defendants' construction appears to rewrite the Asserted Claims without support, which the Court declines to do.

For these reasons, the Court declines to construe the term "canopy piece."

### iii. "Cavity"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "cavity" ('441 Patent, Claims 10, 11, 13, 14, 16, 17, 27; '012 Patent, Claim 1; '723 Patent, Claim 1) | "a space in an elongated rod that may contain: one or more channels, or one or more grooves, and/or one or more tracks that run substantially along the elongated rod" | "an unfilled space within a mass" |

The parties do not appear to have an actual dispute for the term "cavity." Both parties appear to agree that the term "cavity" is used according to its plain and ordinary meaning to a POSITA. The parties dispute the exact language used in

proposed constructions, however. The Court finds that neither parties' construction is necessary and declines to construe the term "cavity."

### iv. "Edge of the Canopy Piece"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "edge of the canopy piece" ('441 Patent, Claims 1, 2; '012 Patent, Claims 1, 4, 6, 12, 15; '755 Patent, Claims 1, 4) | "the parallel end of a canopy piece" | "parallel ends of a canopy piece with each end affixed or connected to an elongated bar and each end being within two adjacent elongated rods" |

The Court declines to construe the term "edge of the canopy piece." Both parties agree that the term "edge of the canopy piece" means a "parallel end" of the canopy piece. Claim 1 of the '441 Patent, Claim 1 of the '012 Patent, and Claim 4 of the '755 Patent all recite that the two edges are parallel and attached to the two elongated bars, which are held by the two parallel elongated rods. Because Claim 1 already recites this language, the parties' constructions are unnecessary and the Court declines to construe the term "edge of the canopy piece."

### v. "Elongated Rods"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "elongated rods" ('441 Patent, Claims 1, 2, 7, 8, 10, 13, 14, 18, 19, 21, 22; '012 Patent, Claims 1, 2, 7, 8, 10, 13, 14, 18, 19, 21, 22; '755 Patent, Claims 1, 3, 4, 7; '723 Patent, Claims 1, 7, 8, 9, 12, 13, 14, 15, 16) | "the portion of a canopy system configured to attach to a connection mechanism that attaches to attach to an elongated bar" | "an extended piece, each connected to one edge of a canopy piece, having at least one upper cavity and one lower cavity, where the upper cavity contains an upper track and a lower track" |

The Court declines to construe the term "elongated rods."

Plaintiff provides no evidence to support its construction. Defendants argue that the "elongated rods" must have an upper and lower cavity. The intrinsic

evidence shows that the elongated rods do not require an upper and lower cavity, however. The Abstract for each of the Asserted Patents states that the "elongated rods *may* include at least one lower cavity … [and] at least one upper cavity[.]" *See, e.g.*, '723 Patent, Abstract (emphasis added). The specifications of the Asserted Patents further disclose, "Each of the elongated rods *can* include at least one lower cavity and at least one upper cavity." *See, e.g., id.* at 1:60–62 (emphasis added). Thus, the specification's use of permissive language to describe the cavities in the elongated rods show that these cavities are not necessary. Finally, Claims 1 of the '012 Patent and '723 Patent recite that "each of the elongated rods ha[s] an enclosed cavity," and Claim 10 of the '441 Patent, which depends from Claim 1, recites "wherein each of the first and the second elongated rod include at least one lower cavity and at least one upper cavity." Thus, the claims explicitly recite when the elongated rods include a cavity, and Defendants' construction would effectively read out that language. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("While not an absolute rule, all claim terms are presumed to have meaning in a claim.")

The parties do not otherwise appear to have a dispute regarding the term "elongated rods." For these reasons, the Court declines to construe this term.

### vi. "Elongated Bars"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "elongated bars" ('441 Patent, Claims 1–3, 11, 13; '012 Patent, Claims 1, 2, 3, 11, 13; '755 Patent, Claims 1, 4; '723 Patent, Claims 1, 16) | "the portion of a canopy system configured to attach to a connection mechanism that attaches to attach along an elongated rod" | "an extended piece each connected to one edge of a canopy piece, which is inserted into the lower cavity of an elongated rod" |

The Court declines to construe the term "elongated bars." Plaintiff provides no evidence to support its construction. Defendants' construction rewrites the claim language and adds limitations without support. Specifically, not every claim recites that "elongated bars" connect to the edges of the canopy pieces and that every elongated rod includes a lower cavity, as explained above for the term "elongated rods." For these reasons, the Court declines to construe this term.

### vii. "Track"

| Term (Claim(s)) | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "track" ('441 Patent, Claims 1, 14, 15, 18, 27; '012 Patent, Claims 1, 2, 12, 13; '755 Patent, Claims 4, 5; '723 Patent, Claims 1, 7, 16) | "one or more portions of an elongated rod that run substantially along the elongated rod" | "an open area within the upper cavity of the elongated rod, running substantially along the elongated rod" |

The Court construes the term "track" to mean "one or more portions of an elongated rod that run substantially along the elongated rod." Both parties appear to agree that the term "track" is used according to its plain and ordinary meaning to a POSITA and "run[s] substantially along the elongated rod." As stated above for the term "elongated rods," the Court declines to import an "upper cavity" limitation into the term "elongated rods." Defendants do not otherwise appear to dispute Plaintiff's construction. For these reasons, the Court adopts Plaintiff's construction.

### IV. CONCLUSION

| Term (Claim(s)) | Court's Construction |
|---|---|
| "accessory" ('441 Patent, Claims 8, 9, 17) | No construction necessary |
| "canopy piece" ('441 Patent, Claims 1, 2, 13, 26; '012 Patent, Claims 1, 4, 5, 12, 15; '755 Patent, Claims 1, 4; '723 Patent, Claims 1, 9, 16) | No construction necessary |
| "cavity" ('441 Patent, Claims 10, 11, 13, 14, 16, 17, 27; '012 Patent, Claim 1; '723 Patent, Claim 1) | No construction necessary |
| "edge of the canopy piece" ('441 Patent, Claims 1, 2; '012 Patent, Claims 1, 4, 6, 12, 15; '755 Patent, Claims 1, 4) | No construction necessary |
| "elongated rods" ('441 Patent, Claims 1, 2, 7, 8, 10, 13, 14, 18, 19, 21, 22; '012 Patent, Claims 1, 2, 7, 8, 10, 13, 14, 18, 19, 21, 22; '755 Patent, Claims 1, 3, 4, 7; '723 Patent, Claims 1, 7, 8, 9, 12, 13, 14, 15, 16) | No construction necessary |

| | |
|---|---|
| "elongated bars" ('441 Patent, Claims 1–3, 11, 13; '012 Patent, Claims 1, 2, 3, 11, 13; '755 Patent, Claims 1, 4; '723 Patent, Claims 1, 16) | No construction necessary |
| "track" ('441 Patent, Claims 1, 14, 15, 18, 27; '012 Patent, Claims 1, 2, 12, 13; '755 Patent, Claims 4, 5; '723 Patent, Claims 1, 7, 16) | "one or more portions of an elongated rod that run substantially along the elongated rod" |

**IT IS SO ORDERED**.